USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/29/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
LG CAPITAL FUNDING, LLC,

                        Plaintiff,

                                                17 Civ. 3118 (DAB)
                                                <u>MEMORANDUM & ORDER</u>

    v.

AIM EXPLORATION, INC.,

                        Defendant.
------------------------------------------------X
**DEBORAH A. BATTS, United States District Judge.**

      On December 22, 2016, Plaintiff LG Capital Funding, LLC filed a Complaint in the Eastern District of New York against Defendant Aim Exploration, Inc. The case was transferred to this District on April 28, 2017 upon consent of the parties. (ECF No. 8.) Defendant answered the Complaint on May 15, 2017. (ECF No. 11.) The Court then held a Rule 16 conference and set a schedule for Plaintiff to file an Amended Complaint and for Defendant to file a Rule 12(b)(6) Motion to Dismiss. Plaintiff amended its Complaint on July 20, 2017, asserting causes of action for breach of a securities purchase agreement (Count 1) and a note (Count 2), unjust enrichment (Count 3), and for costs, expenses, and attorneys' fees pursuant to the note (Count 4). (ECF No. 17.) Defendant filed the instant Motion on August 14, 2017,

asserting that the Note is usurious and thus void under New York law. For the following reasons, the Court DENIES the Motion.[1]

I. BACKGROUND

On June 5, 2015, the parties entered into two agreements: a Securities Purchase Agreement (Am. Compl. Ex. 1 (the "SPA")) and a $57,875.00 convertible redeemable note (Am. Compl. Ex. 2 (the "Note")) (together, the "Agreements"). (Am. Compl. ¶¶ 7-9.) The Note has a maturity date of June 5, 2016 and provides for an 8% annual interest rate. (Note at 1.)

The Agreements give Plaintiff the option of converting debt pursuant to the Note to share of Defendant's stock. The Note provides Plaintiff with the right to convert all or part of the outstanding principal into shares of Defendant's stock at a discount market price. (Note § 4(a).) If Plaintiff were to opt to convert any of the principal into stock, the price per share would be equal to 55% of the lowest trading price of the stock for the fifteen trading days prior to when the notice of conversion is sent (including the date the notice is sent). (Id.) The SPA states that Plaintiff "is purchasing the Note and

---

[1] The parties in this case have filed a number of similar cases in this District. Notably, this Court has four cases where defense counsel, Mark Basile, has asserted a usury defense. This Memorandum & Order is substantially the same as that issued in Case No. 17 Civ. 4394.

the shares of Common Stock issuable upon conversion of or otherwise pursuant to the Note." (SPA § 2(a).) To effectuate a conversion, the Note requires Plaintiff to submit a notice of conversion to Defendant. (Note § 4(a).)

Coupled with the stock conversion provisions are ones related to the reservation of stock to ensure availability of shares for the purposes of conversion. (Am. Compl. ¶ 15; see also SPA § 3(c).) The Note provides that Defendant will issue 1,830,000 shares of its stock to a transfer agent for conversion. (Note § 12.) It further states that Defendant "should at all times reserve a minimum of four times the amount of shares required if the [N]ote would be fully converted" and that Plaintiff "may reasonably request increases from time to time to reserve such amounts. (Id.)

Both Agreements set forth various circumstances that constitute default. Under the SPA, failure to abide by its conversion provisions constitutes default. (SPA § 8(k).) The Note provides that Defendant's failure to pay interest or principal constitutes a default. (Note § 8(a).) It also states that Defendant's failure to deliver stock to Plaintiff within 3 business days of its receipt of a notice of conversion is a default. (Id. § 8(k).)

The Note provides for various penalties in the event of default. It sets a default interest rate of 24% annually "or, if

such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Id. § 8.) In the case of a default based on failure to deliver stock, Defendant is required to pay daily liquidated damages of $250.00 per day the stock is not issued (beginning on the fourth day after receipt of the conversion notice), escalating to $500.00 per day on the tenth day. (Am. Compl. ¶ 31; Note § 8.) The Note further provides, "If this Note is not paid at maturity, the outstanding principal due under this Note shall increase by 10%." (Note § 8.) The Note also provides that Defendant "agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by [Plaintiff] in collecting any amount due under this Note." (Id. ¶ 7.)

From December 2015 to February 2016, Plaintiff issued four conversion notices to Defendant, seeking to convert portions of the principal balance and interest of the Note to stock. (Am. Compl. ¶ 18; Am. Compl. Ex. 4.) After the conversions totaling $25,375.00 were made, the outstanding principal on the Note was $32,500.00. (Am. Compl. ¶ 19 & n.1.) Plaintiff submitted a fifth notice of conversion to Defendant on June 21, 2016, seeking to convert $7,500.00 in principal and $621.37 in interest of the Note into 369,153 shares. (Id. ¶ 22; Am. Compl. Ex. 4.) Defendant did not honor the June 21, 2016 notice of conversion. (Am. Compl. ¶ 23.)

Plaintiff alleges that the failure to honor the notice of conversion constitutes a breach of the SPA and the Note. (Am. Compl. ¶¶ 24, 30.) Plaintiff alleges that the balance of the Note on the date of default was $38,328.63, consisting of $35,078.63 in principal and interest and $3,250.00, representing the 10% balance increase pursuant to § 8. (Am. Compl. ¶ 28.) It also alleges that, as of the date of filing the Complaint, liquidated damages had accrued to $89,500.00 and continue to accrue. (Am. Compl. ¶ 32.)

II. DISCUSSION

Defendant seeks to dismiss Plaintiff's Complaint on the ground that the Notes are criminally usurious as a matter of law.[2] It offers several reasons why the Notes are usurious: (1) the 45% conversion discount; (2) the reservation of shares; and (3) the default interest rate. Defendant argues that criminally

---

[2] Defendant asserts in passing that Plaintiff has not adequately alleged diversity of citizenship. (Def.'s Mem. Law Supp. Mot. Dismiss ("Def.'s Mem.") at 2-3.) However, Plaintiff has alleged in the Amended Complaint that it is a New York limited liability company composed entirely of New York citizens, while Defendant is a Nevada corporation. (Am. Compl. ¶¶ 1-2.) This is sufficient to establish diversity jurisdiction. See Mills 2011 LLC v. Synovus Bank, 921 F. Supp. 2d 219, 220–21 (S.D.N.Y. 2013); Receiveables Exch., LLC v. Hotton, No. 11-CV-0292 JS WDW, 2011 WL 239865, at *1 (E.D.N.Y. Jan. 21, 2011). Furthermore, both Agreements contain a New York choice of law and forum selection clause (Am. Compl. ¶ 40; SPA § 5(a); Note § 14), and this case was transferred from the Eastern District upon consent of the parties. (ECF No. 8.)

5

usurious notes are void under New York General Obligations Law § 5-511.

A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

B. New York Usury Law

Under New York Penal Law § 190.40, a loan is criminally usurious when the lender "charges . . . as interest on the loan . . . a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." Hillair Capital Invs., L.P. v. Integrated Freight Corp., 963 F.Supp.2d 336, 339 (S.D.N.Y. 2013) (citing Gandy Mach., Inc., v. Pogue, 483 N.Y.S.2d 744, 745 (N.Y. App. Div. 3d Dep't 1984)); see also Zhavoronkin v. Koutmine, 52 A.D.3d 597, 562 (N.Y. App. Div. 2d Dep't 2008) ("There is a strong presumption against a finding of usury, and . . . the defendant [must] establish usury by clear and convincing evidence."). A party asserting a usury defense must prove that the lender "(1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance. The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute." Hufnagel v. George, 135 F. Supp. 2d 406, 407 (S.D.N.Y. 2001) (emphasis in original) (quoting In re Venture Mortg. Fund, L.P., 245 B.R. 460, 473-74 (Bankr. S.D.N.Y. 2000), aff'd, 282 F.3d 185 (2d Cir. 2002)); see also 72 N.Y. Jur. 2d Interest and Usury § 55 (setting forth elements of usury claim).

Because Defendant is a corporation, the civil usury defense is unavailable to it. N.Y. G.O.L. § 5-521; Scantek Med., Inc. v. Sabella, 582 F. Supp. 2d 472, 474 (S.D.N.Y. 2008). While civilly usurious contracts are void as a matter of law pursuant to General Obligations Law § 5-511, whether criminally usurious loans are void is an open question under New York law. Adar Bays, LLC v. Aim Expl., Inc., 285 F. Supp. 3d 698, 704 (S.D.N.Y. 2018) (citing In re Venture Mortg. Fund, L.P., 282 F.3d 185, 189 (2d Cir. 2002)).

C. Application

1. Conversion Discount

Defendant argues that the 45% conversion discount renders the Note usurious because Plaintiff would always receive 45% more on each dollar that it converted into stock under the Note. (Def.'s Mem. at 12-13.) Thus, according to Defendant, the Court must include the 45% discount rate in its interest computations.

Defendant's argument fails the Motion to Dismiss stage. Judge Marrero considered an identical conversion discount provision in Adar Bays, LLC v. Aim Exploration, Inc., 285 F. Supp. 3d 698, 700 (S.D.N.Y. 2018), and Judge Sullivan considered a nearly identical provision in Union Capital LLC v. Vape Holdings Inc., No. 16 CIV. 1343 (RJS), 2017 WL 1406278, at *1

(S.D.N.Y. Mar. 31, 2017) (58% of the lowest trading price within thirteen days prior to receipt of the notice).

Both judges noted that the plaintiff could have chosen to be repaid in cash and that that would not have been usurious. Adar Bays, 285 F. Supp. 3d at 702; Union Capital, 2017 WL 1406278, at *5. Further, they reasoned that there were a number of circumstances under which the lender would realize no profit from the stock conversion as stock is not necessarily fully liquid. Adar Bays, 285 F. Supp. 3d at 702; see also Union Capital, 2017 WL 1406278, at *5 ("[A]ny potential profit Union might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation."). For example, the stock price might plummet following submission of a conversion notice. Adar Bays, 285 F. Supp. 3d at 702. All of this is speculative, but both cases point to the underlying issue: this involves questions of fact that are inappropriate to resolve at the Motion to Dismiss stage.

Furthermore, the usury defense with respect to the conversion discount "would likely . . . fail because it relies on the debt-to-equity conversion feature of the notes." Beaufort Capital Partners LLC v. Oxysure Sys., Inc., No. 16-CV-5176 (JPO), 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017). While "the initial transaction took the form of a loan, upon conversion to

equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense." Id. (citing Seidel v. 18 E. 17th St. Owners, Inc., 79 N.Y.2d 735, 744 (N.Y. 1992) ("If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'")); see also Adar Bays, 285 F. Supp. 3d at 703; Union Capital, 2017 WL 1406278, at *5; LG Capital Funding, LLC v. 5Barz Int'l, Inc., No. 16-CV-2752(KAM)(JO), 2018 WL 1582077, at *11 (E.D.N.Y. Mar. 31, 2018).

Accordingly, the Court denies Defendant's Motion to Dismiss with respect to its argument that the conversion discount renders the Note usurious.

### 2. Reservation of Shares

Defendant next argues that the Notes are criminally usurious because they require Defendant to reserve shares as security for the loans to set aside for the conversion option. The Note provides that Defendant would issue 1,830,000 shares of its stock to a transfer agent for conversion. (Note § 12.) It further states that Defendant "should at all times reserve a minimum of four times the amount of shares required if the [N]ote would be fully converted" and that Plaintiff "may reasonably request increases from time to time to reserve such amounts. (Id.)

In support of its argument, Defendant cites New York General Obligations Law § 5-511, which states that "[a]ll . . . notes . . . whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void." Section 5-501 is New York's civil usury statute, which prohibits a lender from collecting on a loan with interest payment exceeding 16% per annum. N.Y. Gen. Oblig. Law § 5-501; Sabella, 2009 WL 3233703, at *16.

This argument fails though because, on its face, § 5-511 applies to civil, not criminal usury. Corporations, including Defendant in this action, cannot assert a civil usury defense. See supra p. 8; Adar Bays, 285 F. Supp. 3d at 704 (citing Sabella, 2009 WL 3233703, at *16). Defendant's Motion to Dismiss is thus denied on this basis.

### 3.   Default Interest Rate

Defendant next argues that the default provisions cause the Notes to violate the criminal usury laws. The Note provides for a default interest rate of 24% annually "or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Note § 8.) In the case of a default based on failure to deliver stock, Defendant is required

to pay daily liquidated damages of $250.00 per day the stock is not issued (beginning on the fourth day after receipt of the conversion notice), escalating to $500.00 on the tenth day. (Am. Compl. ¶ 31; Note § 8.) The Note further provides, "If this Note is not paid at maturity, the outstanding principal due under this Note shall increase by 10%." (Note § 8.) The Note also provides that Defendant "agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by [Plaintiff] in collecting any amount due under this Note." (Id. ¶ 7.)

As a preliminary matter, the Court notes that it is unsettled under New York law whether usury statutes apply to defaulted debts. Adar Bays, 285 F. Supp. 3d at 704. However, the Court need not resolve this question because Defendant's arguments fail for separate reasons. See id. On its face, a 24% interest rate is not criminally usurious.

Defendant argues that the liquidated damages are disguised interest, making the Note usurious. "Under New York law, courts will uphold and enforce liquidated damages provisions where (1) actual damages are difficult to determine and (2) the amount of damages awarded pursuant to the clause is not clearly disproportionate to the potential loss." Union Capital, 2017 WL 1406278, at *7. Although courts should be reluctant to interfere with these provisions, "if the clause in question does not

satisfy one or both of these factors then it is considered an impermissible penalty and will not be enforced by the courts." Id. "The assertion that a liquidated damages clause is in fact an unenforceable penalty is an affirmative defense." Bell v. Ramirez, No. 13-CV-7916 PKC, 2014 WL 7178344, at *3 (S.D.N.Y. Dec. 9, 2014). Because it is an affirmative defense, it is inappropriate to resolve the question of whether the liquidated damages provisions of the Note are enforceable at the Motion to Dismiss stage. See Adar Bays, 285 F. Supp. 3d at 705 ("If necessary, this Court can account for any potentially unenforceable aspects of the penalties as part of a damages calculation at a later point in these proceedings."). The Court notes, however, that other courts considering identical provisions have held that they were unenforceable penalties. See, e.g., Union Capital, 2017 WL 1406278, at *7 (resolving question on summary judgment).

Accordingly, the Court rejects Defendant's argument that the default provisions render the Notes usurious. Defendant's Motion is thus also denied on this basis. Because the Court has determined that the Notes are not criminally usurious as a matter of law, it need not determine whether criminally usurious notes are void ab initio. See Adar Bays, 285 F. Supp. 3d at 705–06.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED. Defendant shall answer the Amended Complaint within 21 days of the date of this Memorandum & Order. There shall be no extensions.

SO ORDERED.

DATED:   New York, NY
         August 29, 2018

_Deborah A. Batts_
Deborah A. Batts
United States District Judge